1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DEWAYNE McGEE RICHARDSON,

11            Plaintiff,                    No. CIV S-04-1603 GEB DAD P

12        vs.

13   O. DICKINSON, et al.,

14            Defendants.                   <u>FINDINGS & RECOMMENDATIONS</u>

15   _____/

16            Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  Before the court is a motion for summary judgment, or in the alternative,

18   summary adjudication brought on behalf of defendants Sandham, James, Roche and Dickinson,

19   all of whom are physicians employed at High Desert State Prison.

20                        PROCEDURAL HISTORY

21            Plaintiff initiated this action by filing his complaint on August 9, 2004.  On

22   August 13, 2004, the court granted plaintiff leave to proceed in forma pauperis and dismissed the

23   complaint with leave to amend.  Plaintiff was advised that if he wished to proceed with this

24   action he would be required to provide allegations concerning each named defendant.  The court

25   noted that plaintiff's original complaint contained allegations only as to defendant Sandham.

26   /////

1  Plaintiff was also advised regarding the legal standards with respect to stating a cognizable

2  Eighth Amendment medical care claim.

3          Plaintiff filed his amended complaint on September 27, 2004 but because it lacked

4  a signature, it was dismissed with leave granted to file a second amended complaint.  Plaintiff

5  was subsequently granted an extension of time, and on June 20, 2005, he finally filed the second

6  amended complaint which is the operative pleading before the court.

7          On July 21, 2005, the court ordered plaintiff to submit documents which were

8  needed for service by the U.S. Marshal.  Plaintiff submitted the documents on August 11, 2005.

9  On August 22, 2005, the court ordered the U.S. Marshal to serve defendants Sandham,

10  Dickinson, James, Roche, Diggins, and Mangis.  In that order, plaintiff was also advised of the

11  requirements for opposing a summary judgment motion.

12          An answer was filed on behalf on defendants Roche and James on October 28,

13  2005, and for defendants Dickinson and Sandham on December 6, 2005.

14          On November 4, 2005, the court filed its discovery order.  On December 19, 2005,

15  plaintiff filed a motion to compel concerning his attempts to obtain the residential addresses of

16  defendant Mangis and Diggins from the litigation coordinator at High Desert State Prison.  On

17  January 5, 2006, the court denied the motion because the U.S. Marshal had determined that these

18  defendants were no longer employed at High Desert State Prison and the Department of

19  Corrections was unable to locate them.  Plaintiff was provided an additional sixty days to provide

20  the documents for service on those two defendants, but failed to do so.

21          On February 15, 2006, the court filed findings and recommendations

22  recommending that the claims against defendants Mangis and Diggins be dismissed due to

23  plaintiff's failure to submit new documents for service on these defendants.  The findings and

24  recommendations were adopted by the assigned District Judge on May 5, 2006.

25  /////

26  /////

SECOND AMENDED COMPLAINT

Plaintiff claims that he received constitutionally inadequate medical care for a left ankle injury that he suffered while playing basketball in August of 2003 at High Desert State Prison.  On the day of his injury, plaintiff was given an ace bandage and an ice pack, and was told to keep his foot elevated.  When the swelling and pain continued for over a month, plaintiff again sought medical attention.  Plaintiff was prescribed Motrin and told to ice and elevate his foot.  Plaintiff requested an x-ray to determine the extent of his injury, but his request was denied.  (Second Am. Compl., Attach. at 1.)

Defendant Sandham is the Chief Medical Office at High Desert State Prison and reviewed plaintiff's grievances regarding his medical care.  Defendant Dr. Dickinson examined plaintiff's swollen left ankle on September 29, 2003 and November 21, 2003.  Both times defendant Dickinson prescribed ibuprofen but denied plaintiff's requests for an x-ray.  Defendant Dr. James examined plaintiff's ankle on January 2, 2004.  Plaintiff contends that he showed defendant James "the disparity of the ankle bone being 3 to 4 inches out of joint, and the pain plaintiff continue to have, that went untreated."  (Id., Attach. at 3.)  Plaintiff contends that defendant James acknowledged that plaintiff had a dislocated bone that had improperly healed, but still refused to provide him medical treatment or order an x-ray.  (Id.)  Defendant Roche is the Chief Physician and Surgeon who reviewed plaintiff's inmate grievance at the first level of review.[1]

/////

---

[1]  Plaintiff's original claims concerning the actions of Dr. Diggins and Dr. Mangis have been dismissed.  Dr. Diggins initially examined plaintiff's left ankle after it was injured in 2003.  (Second Am. Compl., Attach. at 4.)  Plaintiff's claim concerning Dr. Mangis involved plaintiff's right ankle which was injured on June 7, 2004.  (Id., Attach at 5-8.)  In fact, Dr. Mangis was the only defendant named by plaintiff with respect to his claim that he received constitutionally inadequate medical care for the injury to his right ankle suffered on June 12, 2004.  (Id.)  With the dismissal of Dr. Mangis, plaintiff's only claim before the court against the remaining defendants is his claim that he received constitutionally inadequate medical care for the injury to his left ankle suffered in August of 2003.  (Id., Attach at 1-5; Second Am. Compl. at 5.)

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

1  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

2  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

3  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

4  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

5  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

6  1436 (9th Cir. 1987).

7           In the endeavor to establish the existence of a factual dispute, the opposing party

8  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

9  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

10  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

11  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

12  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

13  committee's note on 1963 amendments).

14           In resolving the summary judgment motion, the court examines the pleadings,

15  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

16  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

17  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

18  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

19  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

20  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

21  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

22  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

23  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

24  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

25  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

26  /////

1    On August 22, 2005, the court advised plaintiff of the requirements for opposing a

2    motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

3    F.3d 952, 957 (9th Cir. 1998) (en banc) and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir.

4    1988).

5                                    PARTIES' ARGUMENTS

6    I.  Defendants Arguments

7    Defendants argue that plaintiff received appropriate medical care and that there is

8    no evidence that defendants were deliberately indifferent to plaintiff's serious medical needs.  In

9    this regard, defendants contend that the facts set forth below are undisputed.

10   On September 17, 2003, plaintiff injured his left ankle.  (State. of Undisputed

11   Facts (UDF), ¶ 6 at 2.)  On September 21, 2003, plaintiff sought medical care and on September

12   29, 2003, he was seen by defendant Dr. Dickinson.  (Id. ¶¶ 7 & 8 at 2.)  Defendant Dickinson

13   noted "swelling and ecchymosis over the lateral malleolar area and slightly decreased range of

14   motion.  Plaintiff was wearing an ace wrap and reported he did not need crutches."  (Id., Roche

15   Decl., ¶ 10 at 10.)  Plaintiff was diagnosed as having a left ankle sprain and was prescribed

16   Motrin for pain and advised to wear his ace wrap.  (Id.)  On October 30, 2003, plaintiff was seen

17   by Dr. Mangis who noted that the ankle exhibited no tenderness, redness, heat or questionable

18   swelling.  (UDF ¶¶ 13 & 14 at 2.)  Plaintiff's recommended dosage of ibuprofen was increased to

19   800 mg and plaintiff was told to continue the ace wrap.  (Id. ¶ 15 at 2-3.)  On November 21,

20   2003, plaintiff was seen by defendant Dr. Dickinson who noted that there was no tenderness or

21   swelling in the ankle.  (Id. ¶¶ 17 & 18 at 3.)  The diagnosis at that time was of a healing ankle

22   sprain.  (Id. ¶ 20 at 3.)  On January 2, 2004, plaintiff was seen by defendant Dr. James.  (Id. ¶ 21

23   at 3.)  Defendant James noted that plaintiff walked without a limp, had normal range of motion,

24   and no swelling or tenderness in the ankle.  (Id. ¶¶ 22 & 23 at 3; Id., Ex. A, Mem. Second Level

25   Appeal Response, dated 2-18-04, at 2.)

26   /////

1        Defendants attach copies of plaintiff's inmate appeals and appeal decisions from

2  the first, second and director's level of appeal.  The responses to the appeals noted that plaintiff's

3  left ankle was examined by three different doctors and that there was no diagnosis of an ankle

4  dislocation or other finding indicating that an x-ray was needed.  Defendants also attached a

5  progress note dated October 30, 2003 in which Dr. Mangis indicated that there was "no

6  tenderness, redness, heat and questioned [sic] a possible slightest bit of swelling which reveals no

7  indentation on digital pressure . . . ."  (Id., Ex. B at 2.)  The remaining medical records pertain to

8  plaintiff's right ankle sprain which occurred on or about June 7, 2004.  Lastly, defendants attach

9  a declaration by defendant Dr. Roche in which the doctor summarizes the observations and

10  diagnosis of plaintiff's left ankle injury and concludes that at no time did the examinations reveal

11  the need for an x-ray or MRI.  (Id., Ex. 2 at ¶ 14.)

12        Defendants argue that plaintiff received appropriate medical care for his left ankle

13  sprain and that defendants were not deliberately indifferent to plaintiff's serious medical needs.

14  (Mot. for Summ. J. (MSJ) at 5.)  At no time did plaintiff's ankle complaints or the doctors'

15  examinations, reveal the need for an x-ray or MRI.  (Id.)  Rather, defendants contend, both

16  plaintiff's complaints and the doctors' examinations were consistent with the defendants'

17  diagnosis that plaintiff had merely suffered a sprained ankle.  (Id.)  Finally, defendants argue that

18  plaintiff was provided appropriate diagnosis and treatment and that plaintiff's mere disagreement

19  with the care provided does not support a claim of deliberate indifference.  (Id. at 8.)

20  II.  Plaintiff's Opposition

21        Plaintiff argues that defendants have failed to meet "their burden of demonstrating

22  that there is no dispute as to any material fact."  (Opp'n at 1.)  Plaintiff contends that the

23  following facts are disputed.

24        1.  Plaintiff contends that on October 30, 2003 he complained to Dr. Mangis about

25  tenderness, swelling and discoloration of his ankle and that defendant Mangis should have

26  /////

1  ordered an x-ray or MRI to "insure no type of injuries occured [sic] not visible to the eye, causing

2  plaintiff['s] ankle to heal dislocated."  (Id. at 2.)

3         2.  Plaintiff disputes the adequacy of defendant Dickinson's examination of

4  plaintiff's ankle on November 21, 2003, when defendant Dickinson reported that plaintiff's ankle

5  exhibited no tenderness or swelling.  (Id.)  Plaintiff also disagrees with defendant Dickinson's

6  position that there was no indication that an x-ray was necessary because plaintiff contends that

7  after "days of icing," there was still swelling and discoloration around his ankle. (Id.)

8         3.  Next, plaintiff "contest[s]" defendant Dickinson's November 21, 2003

9  diagnosis of a healing ankle sprain in light of the fact that his ankle remained swollen and tender

10  on that day.  (Id.)

11         4.  Plaintiff contests defendant James' assessment that on January 2, 2004 plaintiff

12  walked without a limp.  (Id. at 3.)  Plaintiff contends that he had a medical appointment that day

13  "due to the pain and abnormalness [sic] that continued with his ankle, which cause[d] plaintiff to

14  limp . . . ."  (Id.)  Plaintiff also disagrees with defendant James' observation that plaintiff had

15  normal range of motion and no swelling or tenderness.  (Id.)

16         5.  Plaintiff also disagrees with the diagnosis by defendant James on January 2,

17  2004 of a healing sprain and argues that an x-ray or MRI should have been ordered.  (Id.)

18         6.  Plaintiff disagrees with defendants' conclusion that there was never any

19  indication that an x-ray or MRI was needed.  (Id.)  Plaintiff argues that because he continued to

20  complain about pain, swelling, and stiffness over a six month period, an x-ray or MRI was

21  warranted.  (Id.)

22         7.  Plaintiff argues that defendants' contention that their examinations were

23  consistent with the diagnosis of an ankle sprain are "conclusory" because they failed to provide

24  "x-rays or MRI's, or any other sort of medical examination that would support their diagnosis of

25  plaintiff suffering only a[n] ankle sprain."  (Id. at 4.)  Plaintiff argues that the diagnoses rendered

26  by the defendants were based only on visual observations and physical examinations.  (Id.)

8.   Finally, plaintiff disagrees that defendants' treatment of his ankle injury was consistent with the degree of knowledge and skill ordinarily possessed and exercised by members of the medical profession.  (Id.)  Plaintiff argues that a reasonable physician would have taken precautionary measures and ordered an x-ray or MRI "to ensure no bones was [sic] broken or fractured, and no ligaments was torn before presuming plaintiff had only suffered a sprain ankle." (Id.)  Plaintiff also disagrees with defendants' assertion that at no time did they fail to perform a medical procedure that should have been performed.  (Id.)  Plaintiff contends that because his ankle remained swollen "over a period of months" with tenderness and discoloration, and plaintiff's numerous appointments, "other medical procedures" were warranted.  (Id.)

Plaintiff asserts that his ankle has not healed properly due to the inadequate medical care he received from the defendants.  (Id. at 5.)  As to defendants' assertion that examinations of plaintiff's ankle revealed no need for an x-ray, plaintiff contends that five days after his ankle was injured, nurse M. Masterson scheduled plaintiff for an x-ray and that Dr. Mangis ordered plaintiff to be sent to x-ray immediately after conducting an examination.  (Id.) Plaintiff also contends that in response to his inmate appeals, defendants acknowledged the need for x-rays and further examination and treatment by a podiatrist, but have not referred plaintiff to the podiatrist or informed him of the results of the x-rays that were taken on June 18, 2004.  (Id.) Finally, plaintiff argues that "defendants['] failure to provide examination of his ankle with x-rays or MRI's resulted in improper diagnosis leaving plaintiff['s] ankle bone dislocated."  (Id. at 8.)

III.  Defendants' Reply

Defendants argue that plaintiff has failed to provide any evidence of deliberate indifference by the defendants to plaintiff's serious medical needs and that summary judgment is proper.  (Reply at 2.)  Defendants contend that plaintiff merely disagrees with the treatment he received and that such disagreement does not support a claim of deliberate indifference.  (Id. at /////

1   3.)  Since plaintiff has not provided any evidence of deliberate indifference, defendants argue that

2   plaintiff has not carried his burden of proving an essential element of his claim.  (Id. at 4.)

3                                                    ANALYSIS

4                Plaintiff's claim of inadequate medical care is based on the Eighth Amendment.

5   "Not every governmental action affecting the interests or well-being of a prisoner is subject to

6   Eighth Amendment scrutiny, however."  Whitley v. Albers, 475 U.S. 312, 319 (1986).  It is

7   "unnecessary and wanton infliction of pain" that constitutes cruel and unusual punishment

8   forbidden by the Eighth Amendment.  Id.; see also Ingraham v. Wright, 430 U.S. 651, 670

9   (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).  "It is obduracy and wantonness, not

10  inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and

11  Unusual Punishments Clause."  Whitley, 475 U.S. at 319.

12               In order to maintain an action for cruel and unusual punishment, plaintiff must

13  satisfy a two-part test containing an objective prong and a subjective prong.  First, plaintiff must

14  show that, objectively, he suffered a sufficiently serious deprivation.  See Wilson v. Seiter, 501

15  U.S. 294, 298 (1991).  Second, plaintiff must satisfy a subjective inquiry into whether the

16  defendants had a culpable state of mind in allowing plaintiff's deprivation to occur.  See id. at

17  299.  Mere negligence is insufficient; rather, plaintiff must show that defendants acted with

18  deliberate indifference.  See id.

19               To prevail on an Eighth Amendment claim of inadequate medical care, plaintiff

20  must prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious

21  medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Such a claim has two elements:

22  "the seriousness of the prisoner's medical need and the nature of the defendant's response to that

23  need."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991).

24               A medical need is serious "if the failure to treat the prisoner's condition could

25  result in further significant injury or the 'unnecessary and wanton infliction of pain.'"

26  McGuckin, 974 F.2d at 1059 (quoting Estelle v. Gamble, 429 U.S. at 104).  Indications of a

1  serious medical need include "the presence of a medical condition that significantly affects an

2  individual's daily activities." Id. at 1059-60.  In demonstrating the existence of a serious medical

3  need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation.

4  See Farmer v. Brennan, 511 U.S. 825, 834 (1994).

5        If a prisoner establishes the existence of a serious medical need, then he must

6  show that defendants responded to the serious medical need with deliberate indifference.  Proof

7  that the defendants acted with deliberate indifference is required to satisfy the subjective prong of

8  the two-part test applicable to Eighth Amendment claims.  See Farmer, 511 U.S. at 834.  Before

9  it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the

10 indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or

11 'medical malpractice' will not support this cause of action."  Broughton v. Cutter Laboratories,

12 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).  Deliberate indifference is

13 "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of

14 due care for the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835 (quoting Whitley, 475

15 U.S. at 319).  Mere differences of opinion between a prisoner and prison medical staff as to

16 proper medical care do not give rise to a § 1983 claim.  See Sanchez v. Vild, 891 F.2d 240, 242

17 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1334 (9th Cir. 1981).

18       In his opposition to defendants' motion for summary judgment, plaintiff contends

19 that defendants have failed to carry their burden of proving that plaintiff was provided proper

20 care for his left ankle.  Plaintiff's contention is misguided in that it misapprehends the burdens of

21 the parties with respect to a summary judgment motion.  As set forth above, the burden of proof

22 is initially on defendants to identify and demonstrate the absence of a genuine issue of a material

23 fact.  Once the moving party has met that burden, the burden shifts to the party opposing

24 summary judgment to show the existence of a genuine dispute about a material fact.  In addition,

25 a party who fails to make a showing sufficient to establish the existence of an element essential

26 to that party's case, and on which that party will bear the burden of proof at trial will properly

1   have summary judgment entered against them. Thus, a complete failure of proof concerning an

2   essential element of the nonmoving party's case renders all other facts immaterial and calls for

3   entry of summary judgment in favor of the moving party.

4           Here, defendants rely on medical records, administrative responses to plaintiff's

5   inmate grievances, and defendant Roche's declaration in arguing that the evidence establishes

6   that they were not deliberately indifferent to plaintiff's medical care in treating his left ankle

7   injury and are entitled to summary judgment in their favor.  Their argument is persuasive.  The

8   evidence shows that defendant Dickinson examined plaintiff twelve days after his left ankle

9   injury and determined that plaintiff had a sprained ankle.  Defendant Dickinson recommended

10  that plaintiff wear an ace wrap and prescribed Motrin for pain.  A month later, Dr. Mangis noted

11  that upon examination, plaintiff's left ankle exhibited no tenderness, redness, heat or

12  questionable swelling.  Plaintiff's recommended dosage of ibuprofen was increased and plaintiff

13  was instructed to continue wearing the ace wrap.  Less than a month later, defendant Dickinson

14  noted that plaintiff suffered from no tenderness or swelling of the left ankle.  On January 21,

15  2004, defendant James noted that plaintiff was walking without a limp, had normal range of

16  motion, and suffered from no swelling or tenderness of the left ankle.  As the defendants point

17  out, no evidence before the court suggests that plaintiff's left ankle injury was anything more

18  than a sprain.  The court finds that based upon the evidence relied upon by defendants they have

19  met their burden of  identifying and demonstrating the absence of a genuine issue of a material

20  fact.  Accordingly, the burden shifts to plaintiff  to show the existence of a genuine dispute about

21  a material fact and to tender at least some evidence of deliberate indifference with respect to the

22  treatment of his left ankle injury, a claim upon which he would bear the burden of proof at trial.

23          In his opposition, plaintiff simply argues that he disputes defendants' medical

24  diagnosis and observations regarding the condition of his left ankle.  In response to defendants'

25  medical findings that he suffered from no tenderness or swelling, plaintiff merely argues that he

26  did have swelling, tenderness and discoloration.  No medical records or other evidence is offered

1   to support plaintiff's bald assertion.  Similarly, plaintiff contends that an x-ray should have been

2   performed to verify that he had suffered an ankle sprain and not a more serious injury, but offers

3   no evidence to support his contention.  Lastly, plaintiff disputes defendants' assertion that their

4   examinations never revealed the need for an x-ray of his ankle.  In this regard, plaintiff contends

5   that during his inmate appeals the defendants acknowledged that an x-ray of his ankle was

6   needed and as a result an x-ray was finally taken on June 18, 2004.  (Opp'n at 5.)  This argument

7   advanced by plaintiff is again misguided.  The x-ray to which he refers was performed on his

8   right ankle which was injured while again playing basketball approximately nine months after his

9   left ankle injury which is the subject of this action.[2]  Evidence that an x-ray was ordered for

10  plaintiff's right ankle injury suffered in June of 2004, does not establish a genuine issue of a

11  material fact with respect to plaintiff's only remaining claim that he received inadequate medical

12  care of his left ankle injury suffered in August of 2003.[3]

13          Plaintiff has failed to provide any evidence demonstrating that there exists a

14  dispute regarding any material fact.  Plaintiff has failed to offer any probative evidence that any

15  defendant provided him with constitutionally inadequate medical care in treating his left ankle

16  _____

17          [2]  The medical records with respect to the treatment of plaintiff's right ankle basketball
    injury in 2004 indicate that on June 18, 2004, Dr. Mangis noted:  "Today, he has very severe
18  swelling over the right ankle and foot.  He states he cannot move the ankle in any direction . . . .
    Not sure whether it is voluntary or involuntary inability to move foot in inversion, eversion
19  directions."  (UDF, Ex. B, Progress Note, dated 6-18-04.)  Dr. Mangis ordered an x-ray of
    plaintiff's right ankle at that time, indicating in the medical record:  "X-ray STAT to placate
20  inmate."  (Id.)  The undersigned would also note that throughout his second amended complaint
    and his opposition to the pending summary judgment motion, plaintiff refers to his left ankle
21  basketball injury suffered in August of 2003 as being a "dislocation" which he claims was never
    x-rayed or otherwise properly treated by the defendants.  However, plaintiff alleges in his second
22  amended complaint that he injured his right ankle on June 7, 2004, once again, while playing
    basketball.  (Second Am. Compl. at 5.)  The fact that plaintiff contends that he was again playing
23  basketball in 2004 would appear to be entirely inconsistent with his claim that throughout the end
    of 2003 into 2004 he was suffering from a dislocated left ankle that was never treated.
24
            [3]  As noted above, to the extent plaintiff continues to contend that he received inadequate
25  medical care with respect to the treatment of his right ankle injury, this claim was brought only
    against Dr. Mangis.  Pursuant to the court's May 5, 2006 order, all claims against Dr. Mangis
26  have previously been dismissed.

1  sprain.  Plaintiff's conclusory allegations are unsupported and not colorable.  Accordingly, no

2  genuine issue of material fact is presented.  Rather, plaintiff merely disagrees with the diagnosis

3  and treatment of his left ankle by defendants.  Such a mere difference of opinion about  medical

4  care is insufficient to support a claim of deliberate indifference.  See Sanchez v. Vild, 891 F.2d at

5  242; Franklin v. Oregon, 662 F.2d at 1334.  For these reasons, this court will recommend that

6  summary judgment be granted in favor of defendants on plaintiff's Eighth Amendment claim of

7  inadequate medical care.

8          Accordingly, IT IS HEREBY RECOMMENDED that:

9          1.  The March 17, 2006 motion for summary judgment filed on behalf of

10  defendants Sandham, James, Roche, and Dickinson be granted; and

11          2.  This action be dismissed.

12          These findings and recommendations are submitted to the United States District

13  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

14  days after being served with these findings and recommendations, any party may file written

15  objections with the court and serve a copy on all parties.  Such a document should be captioned

16  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

17  shall be served and filed within ten days after service of the objections.  The parties are advised

18  that failure to file objections within the specified time may waive the right to appeal the District

19  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

20  DATED: January 18, 2007.

21

22  _____

23  DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

24  DAD:4
    rich1603.57

25

26

                                    14